IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| VICTORIA ANN HUTCHISON, ) | Case No. 08-43603-13-abf |
| ) | |
| Debtor. ) | |

## MEMORANDUM OPINION

The matter presently before the Court in this case is the objection filed by Community America Credit Union ("Credit Union") to the amended Chapter 13 plan of Debtor, Victoria Ann Hutchison ("Debtor"). Debtor proposes in her amended plan to surrender a vehicle on which the Credit Union holds a lien in satisfaction of the Credit Union's secured claim after having elected in her original plan to retain the vehicle and pay its value over the course of the plan. The Credit Union objects on numerous grounds. The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b), 157(a) and (b)(1). This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(L), which this Court may hear and determine and in which it may issue a final order. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court overrules the objection of the Credit Union and will confirm Debtor's amended plan subject to the conditions stated below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The essential facts relevant to the Court's determination of the dispute are the subject of a stipulation entered into between the Debtor and the Credit Union and are uncontested. On June 7, 2005, Debtor executed a promissory note and security agreement with the Credit Union in the amount of $29,691.92 with interest at 7.9% per annum for 72 months with payments of

$520.80 per month. That obligation was secured by a 2005 Chevrolet Malibu. The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on August 28, 2008. One day after filing her petition, Debtor filed an original Chapter 13 plan in paragraph 7(d) of which she proposed to retain the vehicle and pay the amount of $10,210.00, which she alleged to be the value of the vehicle, over the course of the plan in monthly payments of $125.00. The Credit Union filed an objection to the plan which was overruled and on October 27, 2008, the Court entered its order confirming the plan.

The allowable amount of the Credit Union's claim was subject to additional proceedings. On December 20, 2008, the Credit Union filed a claim in the amount of $17,513.96, ascribing a value to the vehicle of $12,675.00, indicating that its claim should be secured in that amount with the balance of $4,838.96 being treated as an unsecured claim. Debtor filed an objection to the Credit Union's claim asserting that the value of the claim was as set forth in the plan, but subsequently withdrew that objection. Debtor made amendments to the Chapter 13 plan on two occasions increasing the amount of the payment, but not affecting the treatment of the Credit Union's claim.

Several times over the course of the next two years, the Debtor filed motions to suspend payments due under the plan which were granted by the Court. Those suspensions were granted on June 24, 2009, in the amount of $285.00 (representing one month's payment), on October 23, 2009, in the amount of $700.00, on June 9, 2010, in the amount of $700.00 and on September 20, 2010, in the amount of $1,125.00.[1]

---

[1] In paragraph 25 of their stipulation, the parties have asserted that the total amount suspended during the course of the case was $4,950.00. The Court's review of the record does not confirm that number. However, as indicated at the end of the opinion, this Court has directed the Chapter 13 trustee to advise the Court of the amounts the Credit Union would have been paid absent the suspensions and payment defaults in order to effectuate the

The present dispute arose as a result of the filing by the Debtor on September 20, 2010, of an amended Chapter 13 plan in which she proposes to surrender the vehicle and reduce her plan payments to $110.00 per month, extinguishing the Credit Union's secured claim and allowing it an unsecured claim for a deficiency.  The Credit Union has objected to the proposed amendment contending that it is unauthorized by the Bankruptcy Code and that it should retain a secured claim for the balance due it under the plan after application of the proceeds of sale of the vehicle.  The vehicle was surrendered to the Credit Union in the state of Texas where Debtor now resides and sold for the net amount (after $270.00 of recovery expenses) of $6,330.00.  The remaining principal balance on the secured claim of the Credit Union at the time of surrender was $11,714.18, which would leave a balance of $5,384.18.  From the date of the first payment to the date of surrender, the Chapter 13 trustee has disbursed to the Credit Union only $960.82 in principal payments on its secured claim.

Debtor's amendment was prompted by health conditions which caused her physician to advise her to move to a different climate.  In November 2010, Debtor moved in with her daughter in an attempt to reduce expenses because she was having difficulty making the payments to the Chapter 13 trustee along with rent and other monthly expenses as a result of high medical costs.

## II. DISCUSSION AND ANALYSIS

At issue in this case is whether the Debtor can modify her previously confirmed Chapter 13 plan, in which she proposed to retain the vehicle and pay its fair market value (at an appropriate rate of interest) over the course of the plan to surrender the vehicle in satisfaction of

---

condition that it has determined to impose on confirmation of the amended plan.

the secured claim with the balance being treated as unsecured. As a threshhold matter, the Court must determine whether any modification to the plan is appropriate under the circumstances. Although there is a difference of opinion on the subject, a number of courts have held, in part to recognize the binding effect of a confirmed Chapter 13 plan pursuant to § 1327(a), that the debtor must demonstrate a substantial unanticipated change in circumstances in order to seek modification of the plan. This Court agrees with those cases and has applied that standard in the past. S*ee, e.g., In re Clevinger*, 430 B.R. 539, 541 (Bankr. W.D. Mo. 2009); *In re Arnold*, 869 F.2d 240 (4th Cir. 1989); *In re Dunlap*, 215 B.R. 867, 869 (Bankr. E.D. Ark. 1997); *In re Guernsey*, 189 B.R. 477, 480-81 (Bankr. D. Minn. 1995). In this case, the requirement is satisfied because the Debtor's financial circumstances have changed. It is not disputed here that for health reasons, the Debtor moved to Texas and has experienced increases in expenses reducing her net monthly income and making her unable to continue to make the payments under the plan as originally structured. It is that set of circumstances which has caused her to amend the plan to provide for the surrender of the vehicle in satisfaction of the secured claim.

There is a substantial difference of opinion among the courts as to whether a debtor who has initially opted to retain a vehicle and pay its value over the life of the plan may, subsequent to confirmation of that plan, amend the plan to surrender the vehicle and extinguish the secured claim. The principal case denying the debtor's right to make such a modification is *In re Nolan*, 232 F.3d 528 (6th Cir. 2000). In *Nolan*, the debtor sought to modify a confirmed plan to surrender a depreciated vehicle as payment of a secured claim and to designate any deficiency as unsecured. The court in *Nolan* held that a bankruptcy court cannot authorize a plan modification that proposes surrender of collateral as payment of a secured claim. It determined that § 1329(a),

4

by its plain terms, permitted modification only of the amount or timing of specific payments, but not to increase or reduce the amount of claims. *Id.* at 534. Thus, the court in *Nolan*, narrowly interpreted § 1329(a) so as to prohibit a modification that reclassified the deficiency remaining after surrender of a vehicle from secured to unsecured status. The court reasoned that such a modification amounts to an impermissible reduction (or disallowance) of the secured claim, an alteration of rights that the *Nolan* court suggested is prohibited by § 1329(a). *Id.* at 532-533. Several courts have followed *Nolan* holding that the amendment is barred by the doctrine of res judicata, not authorized by the provisions of the Bankruptcy Code or unfair to the secured creditor. Numerous other courts have criticized *Nolan* and its progeny suggesting that a more careful analysis of the provisions of the Bankruptcy Code reveals that such a modification is authorized by several different provisions of the Code, that unfairness can be alleviated by creditor diligence in objecting to plans proposing inadequate streams of payments and that abuse can be regulated by the Code's good faith requirement. Commentators are similarly split.[2] For the reasons set forth in detail below, this Court finds persuasive the reasoning in those cases which have permitted modification, subject to certain conditions.

The Credit Union argues that the plan may not now be modified in the manner requested by Debtor because the plan is res judicata as to the amount and treatment of its secured claim. Although it is true that a confirmed plan has a res judicata effect as a result of the provisions of § 1327(a), the confirmed plan may nonetheless be modified. Section 1327 states the binding effect of the plan, but § 1329 specifically permits modification of a Chapter 13 plan subsequent

---

[2] Norton's treatise adopts the *Nolan* view. 7 Norton Bankruptcy Law and Practice 3d. § 150:3 (Norton 2010). Both Collier on Bankruptcy, 8 Collier on Bankruptcy ¶ 1329.04 (A. Resnick & H. Sommer 15th ed. 2007) and Judge Lundin's treatise on Chapter 13, 3 Keith M. Lundin, Chapter 13 Bankruptcy §264.1 (3d ed. 2000 & Supp. 2004), criticize *Nolan* and endorse the opposite approach.

to confirmation. *See, e.g., In re Knappen*, 281 B.R. 714 (Bankr. D.N.M. 2002); *In re Townley*, 256 B.R. 697 (Bankr. D.N.J. 2000); *In re Day*, 247 B.R. 898 (Bankr. M.D. Ga. 2000); *In re Rimmer*, 143 B.R. 871 (Bankr. W.D. Tenn. 1992); *In re Jock*, 95 B.R. 75 (Bankr. M.D. Tenn. 1989); *In re Stone*, 91 B.R. 423 (Bankr. N.D. Ohio 1988). To hold otherwise would be to write § 1329 out of the Bankruptcy Code. The ability to modify in the circumstances prescribed by this section has been recognized as a limited exception to the res judicata effect of plan confirmation. *Bank One v. Leuellen*, 322 B.R. 648 (S.D. Ind. 2005); *In re Ward*, 348 B.R. 545 (Bankr. D. Idaho 2005).

Moreover, the issue presently before the Court has in fact not been litigated nor could it have been. The valuation of property securing a claim, according to § 506(a), is determined, among other things, by the proposed use or disposition of the collateral and the timing of the valuation. Proceedings related to confirmation of the original plan determined the appropriate value of the vehicle assuming the Debtor would retain the vehicle and pay its value over the course of the plan. The appropriate valuation in that circumstance would be retail value at the time confirmation of the plan was being considered. The Court could not have and did not determine the appropriate valuation of the vehicle in the event it were to be surrendered approximately two years later. The appropriate measure of valuation for collateral to be surrendered would be liquidation value at the time of surrender.

A Chapter 13 plan may be modified post-confirmation to affect the rights of a secured creditor. Section 1322(b)(2) specifically authorizes a Chapter 13 debtor to modify the rights of holders of secured claims. That provision is made applicable to modification of plans after confirmation by § 1329(b)(1). In addition, § 1323(c) provides that any holder of a secured claim

6

that has accepted or rejected the plan is deemed to have accepted or rejected the plan as modified, unless the modification provides for a change in the rights of such holder. Accordingly, that provision contemplates modification which might change the rights of secured creditors. While by its terms, it refers only to modifications made before confirmation, it is also made applicable to post-confirmation modifications by specific reference in § 1329(b)(1). *See Leuellen*, 322 B.R. at 656; *In re Hernandez*, 282 B.R. 200 (Bankr. S.D. Tex. 2002). It is also clear that collateral may be surrendered to a secured creditor in an original or modified Chapter 13 plan. Section 1325(a)(5)(C) specifically identifies surrender as an acceptable method of dealing with a secured claim. The provisions of § 1325(a) are made applicable to post-confirmation modifications by § 1329(b)(1). *Hernandez*, 282 B.R. at 207. The Code also provides that a debtor may pay claims from property of the estate or from property of the debtor. § 1322(b)(8). That provision is also made applicable to post-confirmation modification of plans by § 1329(b)(1). *Day*, 247 B.R. at 901; *Rimmer*, 143 B.R. at 876; *Jock*, 95 B.R. at 77. The surrender to a secured creditor of its collateral satisfies and thus extinguishes the secured portion of its claim. This is true in an original Chapter 13 plan and would be true of post-confirmation modification as well. *Leuellen*, 322 B.R. at 654; *Jock*, 95 B.R. at 77.

The Credit Union suggests that this particular modification, one in which the secured claim, or a portion thereof is "reclassified" as unsecured, is not authorized by any provision of the Bankruptcy Code and is therefore impermissible. The types of authorized post-confirmation modifications of Chapter 13 plans are specified in § 1329(a). Among the modifications that the debtor may effectuate post-confirmation is a modification to increase or reduce the amount of payments on claims of a particular class. § 1329(a)(1). The Credit Union argues that this

provision authorizes a reduction of payments, but not a reduction in the amount of the unsecured claim, which is what the Debtor here proposes to do. However, what the Debtor proposes to do here can fairly be characterized as a reduction in the amount of payments on the secured claim to zero. *Leuellen*, 322 B.R. at 654; *Knappen*, 281 B.R. at 717; *Day*, 247 B.R. at 901. While the statute only authorizes reduction in the amount of payments on classes of claims, each secured creditor is appropriately regarded as a separate class because of its distinct rights in different items of collateral. *Leuellen*, 322 B.R. at 657; *Rimmer*, 143 B.R. at 874. While it has also been suggested that the statute only authorizes the reduction of the amounts of periodic payments, it is not so restricted. Imposing such a limitation would be to infuse language into the text that is not there. The "payments" are the entire string of payments proposed to be made to the secured creditor over the length of the plan. Debtor is proposing to reduce that stream of payments to the amount already paid plus the proceeds received on sale of the vehicle. *Jock*, 95 B.R. at 77. Accordingly, this Court concludes that the proposed modification is authorized by § 1329(a)(1).

The Code also authorizes the debtor to modify a plan to alter the amount of distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment made on the claim other than under the plan. § 1329(a)(3). In this instance, the original plan proposed that the Debtor retain the vehicle and pay its value over time. It did not propose that the vehicle be surrendered to and liquidated by the secured creditor with the sale proceeds applied to the claim. The application of that amount is a distribution received other than under the plan. A modification to take into account that distribution is one authorized by the terms of § 1329(a)(3). *In re Lane*, 374 B.R. 830, 838 (Bankr. D. Kan. 2007); *In re Mason*, 315 B.R. 759, 763 (Bankr. N.D. Ca. 2004); *In re Zieder*, 263 B.R. 114 (Bankr. D. Az. 2001),

8

*Knappen,* 281 B.R. at 717. Debtor's modification credits that amount and adjusts the balance of the secured claim. The additional reduction of the secured claim to zero is a recognition of the fact that a secured claim cannot exist in the absence of collateral and is effectuated pursuant to the provisions of § 506(a). *Mason*, 315 B.R. at 761; *Zieder*, 263 B.R. at 117. Given that the disposition proposed by the amended plan is surrender of the collateral, and that the appropriate valuation upon that disposition would be liquidation value, and that the full liquidation value was received by the creditor on the sale and applied to the claim, the claim is effectively extinguished.

The Credit Union objects that permitting the Debtor to retain the vehicle during this period of time while it depreciated and then surrender the vehicle for sale at liquidation value in satisfaction of its secured claim unfairly places on it the entire risk of depreciation. The Court disagrees and also believes that this argument overlooks the potential impact of a contrary ruling on other participants in the process. As noted above, it is clear that Debtor could have surrendered the vehicle as a part of her original plan and that the creditor would have received its liquidation value, not its retail value, at that time from disposition of the vehicle. Determining whether the Court should permit the Debtor to do so now requires it to consider what has happened in the interim. During the time since confirmation of the original plan, two things have happened. Debtor has made some payments on the secured claim and the property has undoubtedly depreciated in value. Especially after the amendments made to the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the secured creditor had a right to insist, pursuant to § 1325(a)(5)(B)(iii)(II), that the payments be in an amount sufficient to provide adequate protection to the creditor during the period of the plan. Accordingly, if a

9

secured creditor fails to object to a plan which does not propose payments of equal monthly amounts sufficient to offset the likely depreciation in the collateral, the secured creditor is itself responsible for that fact. *Ward*, 348 B.R. at 559; *Mason*, 315 B.R. at 764; *Knappen*, 281 B.R. at 719; *Townley*, 256 B.R. at 700; *Day*, 247 B.R. at 901; *Jock*, 95 B.R. at 78. In addition, as some other courts have pointed out, the secured creditor always bears the risk of depreciation during the course of the plan as the debtor could decide to convert the case to a Chapter 7 proceeding or dismiss the case. In neither event would the secured creditor capture the depreciation occurring since the date of filing if it had not been satisfied by the stream of payments made by the debtor under the plan. *Zieder*, 263 B.R. at 118. Also, as this Court has previously held, the Debtor could effectuate the same result by moving for reconsideration of the secured claim based on the equities of the case as authorized by § 502(j). *In re Ross*, 373 B.R. 656 (Bankr. W.D. Mo. 2007); *Mason*, 315 B.R. at 763; *Zieder*, 263 B.R. at 115; *Knappen*, 281 B.R. at 718. The Court must also consider the unfairness of requiring continuing payments to a secured creditor with no collateral securing its claim and thus diverting funds that might otherwise go to the payment of unsecured creditors. Finally, the Court must also weigh the unfairness to the debtor in being required to continue to make payments which she may no longer be able to afford on a vehicle she no longer possesses and the resulting risk of inability to consummate the plan. *Zieder*, 263 B.R. at 118.

It is true that permitting a debtor to surrender collateral and render the balance of the claim unsecured may be abusive in some circumstances, such as where a debtor fails to insure collateral and proposes to surrender it in a damaged or destroyed state or if the debtor has abused the collateral and subjected it to accelerated depreciation. A plan modification must, however,

pass the good faith test, as all the provisions of § 1325(a), including the good faith requirement contained in (a)(3) are applicable on modification. Potential abuse can be dealt with by applying this good faith standard to proposed modifications. *Hernandez*, 282 B.R. at 204; *Zieder*, 263 B.R. at 119; *Day*, 247 B.R. at 901; *Jock*, 95 B.R. at 78. Since potentially abusive proposals can be dealt with in this fashion, it is unnecessary to hold that debtors may never confirm modified plans proposing collateral surrender in satisfaction of the creditor's secured claim.

      The facts of this case do illustrate one potential problem in allowing such modifications; however, there is a remedy for that problem. In this instance, the Creditor Union has only been paid the sum of $960.82 in principal on its secured claim, primarily as a result of prior suspensions in plan payments granted to the Debtor by the Court and as a result of defaults. Accordingly, the Credit Union has not received payments that it was entitled to receive under the terms of the confirmed plan. Those amounts should be paid to the Credit Union over the remaining life of the plan as a condition to permitting the modification. Other courts have addressed this problem and imposed a similar condition. *Rimmer*, 143 B.R. at 876; *Jock*, 95 B.R. at 78; *Stone*, 91 B.R. at 425. Accordingly, allowance of the modification is subject to the condition that the Debtor pay any amount that should have been paid to the Credit Union if it was not paid by reason of defaults or suspensions. In order to effectuate this condition, the Chapter 13 trustee is ordered to file, within 10 days, a report identifying the amounts the Credit Union would have been paid, but has not been paid as a result of the failure by the Debtor to make plan payments or suspensions of plan payments granted by this Court from the time the first payment was due under the original plan to the date of the surrender of the vehicle.

11

### III.  CONCLUSION AND ORDER

For all these reasons, the Credit Union's objection to confirmation of the modified plan is overruled in part and sustained in part.  Confirmation of the Debtor's plan is ordered subject to the condition that the Debtor pay over the remaining life of the plan all amounts the Credit Union would have received from payments the Debtor failed to make or suspended beginning on the date the Debtor was obligated to commence plan payments through the date of the surrender of the vehicle.   This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.  A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

ENTERED this 3rd day of February 2011.

        /s/ Dennis R. Dow
HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE